Ellenmae **CROW** et al., Plaintiffs,

v.

**CALIFORNIA DEPARTMENT OF HUMAN RESOURCES** et al., Defendants.

No. C–70 1128.

United States District Court, N. D. California.

Oct. 12, 1970.

Stephen P. Berzon, Contra Costa Legal Services Foundation, Richmond, Cal., Randlett W. Schubach, Santa Cruz, Cal., for plaintiffs.

Thomas C. Lynch, Atty. Gen. of Cal., James L. Browning, Jr., U. S. Atty., William Spohn, San Francisco, Cal., Robert N. Ford, Civil Division, Dept. of Justice, Washington, D. C., for defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

WOLLENBERG, District Judge.

This case follows in the wake of Java, et al. v. California Department, etc., et al., 317 F.Supp. 875 (N.D.Calif., 1970). Java held that Goldberg v. Kelly, 397 U. S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), which mandates a due process "fair hearing" prior to termination of welfare benefits, applies equally well to the unemployment compensation field, and that the ends of the Social Security Act, as well as of the Constitution, are best served when persons who have once been found eligible for benefits continue to receive such benefits during the pendency of appeal actions initiated by former employers.

The instant case does not involve an employer's appeal of an initial determination of eligibility. Rather, the Court must pass upon a termination of benefits, without prior hearing, following a finding that the recipient has "without good cause, refused to accept suitable employment when offered to him". Calif. Unempl.Ins.Cde. § 1257(b). Such a determination renders the recipient "ineligible to receive unemployment compensation benefits for not less than two nor more than ten consecutive weeks beginning with the week in which the

cause of * * * disqualification occurs." Calif.Unempl.Ins.Cde. § 1260(b). The plaintiff in the instant case, found to have "precluded an offer of suitable work", was declared ineligible for the full ten week period specified by § 1260 (b).

Though a determination that a recipient has "refused to accept suitable employment" would, in most instances, seem pre-eminently factual, it is made without the recipient being given advance notice that the issue has been raised, or the right to confront and cross-examine those persons whose testimony may prove decisive. It is this failure to provide what are alleged to be the requisites of a "due process 'fair hearing'" that is said to run counter to *Goldberg* and *Java*, cit. *supra*.[1]

■ Certain procedural questions must be resolved before the Court reaches the merits herein. First, it is said that the case is moot, in that the named plaintiff, Mrs. Crow, has had benefits reinstated. The Court finds that while the incident which gave rise to the controversy herein has been resolved, the underlying problem remains. The Department continues to interpret the cited sections so as to stop payments to recipients who have no right to a pre-termination fair hearing. This allegedly arbitrary procedure continues to threaten members of plaintiff's class. See Kelly v. Wyman, 294 F.Supp. 893, 908 (D.C. 1968); Singleton v. Board of Com'rs., etc., 356 F.2d 771 (5 Cir., 1966).

■ Related to the asserted mootness of the controversy is the motion of one Eldon Lee Allison to intervene as named plaintiff. The motion will be denied.

As noted above, the need of another named plaintiff to keep alive Mrs. Crow's case is at best arguable, and in addition, Allison's affidavit indicates additional issues which would unduly complicate those presented in Mrs. Crow's complaint.

■ Finally, the State and federal defendants contest the propriety of this suit as a class action under Rule 23. The Court notes that a great many of the recent cases presenting issues similar to this one have been class actions, as would seem appropriate: under challenge are state-wide procedures uniformly applicable to large numbers of persons no one of whom has such a financial stake as would justify the prosecution of an individual action. Kelly v. Wyman, cit. *supra*, 294 F.Supp. at 908; Wheeler v. Montgomery, 296 F.Supp. 138 (D.C.1968), rev'd on other grounds 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970); Johnson v. Robinson, 296 F. Supp. 1165 (D.C.1967). See also 28 U.S.C.A. Rule 23, Notes of Advisory Committee on Rules [note to Rule 23(b) (1) (A)]. In light of these precedents, the Court finds this a proper class action under Rule 23 of the Federal Rules of Civil Procedure.

The Court thus moves to the merits. After hearing extensive oral argument, receiving exhaustive legal memoranda, and having taken under submission cross motions for summary judgment, it is this Court's decision that the arguments presented by the defendants were, without exception, made to and rejected by the judges in *Goldberg* and *Java*, cit. *supra*, and that plaintiffs are accordingly entitled to summary judgment.

1. None of the parties herein moved for a three-judge Court, and the Court did not ask for one on its own motion. It was felt that the issues raised herein had been thoroughly aired, and resolved, by Goldberg v. Kelly, and Java v. Calif. Dep't of Human Resources, cit. *supra*. Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962). Likewise the prayer herein was not to enjoin, on grounds of unconstitutionality, the execution of §§ 1257(b) and 1260(b), but was rather to enjoin the interpretation of these statutes in a manner inconsistent with *Goldberg* and *Java*. Benoit v. Gardner, 351 F.2d 846 (1 Cir., 1965). This Court is aware that had it become apparent that the instant case presented issues in any significant way different from those discussed in previous cases, or if claims for relief had been broadened, a three-judge court might well have been necessary under 28 U.S.C. § 2281.

The arguments against relief, considered in reverse order of importance, are the following: (1) unemployment insurance programs, and the practices here challenged, are nationwide, and the Court should avoid tinkering with questions of such broad import; (2) the public purse will be unduly threatened if the procedure urged by plaintiff is adopted; (3) the *Goldberg* rationale should be confined to welfare and has no application to unemployment compensation programs; (4) even if applicable to unemployment compensation, the *Goldberg* reasoning should not be applied to the case of Mrs. Crow.

■ (1) Unemployment insurance, like public assistance, is administered by the individual States within a federal statutory framework. Both programs involve grants made to the States which have established programs of aid to unemployed and/or needy persons, which programs have been certified by relevant officials as meeting the standards set by federal statutes and regulations. A challenge to any part of this national program will have repercussions elsewhere, but it would belabor the obvious to cite the decisions which have been rendered in these areas by Courts undeterred by fears that any lead provided by them might be followed in other jurisdictions. To be further noted is that any decision with regard to California's procedures will *not* be automatically applicable to other States. The demands of procedural due process must always be interpreted in light of particular systems and situations; a decision as to one such system will not be automatically applied elsewhere in the same way as were decisions based on substantive due process, e. g., Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); and Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

■ (2) The public purse has been repeatedly invoked in cases prior to this one. This Court will only echo its predecessors: fiscal considerations are always relevant, but are seldom if ever decisive in cases of this sort. "Against the justified desire to protect public funds must be weighed the individual's overpowering need in this unique situation not to be wrongfully deprived of assistance." Kelly v. Wyman, cit. *supra,* 294 F.Supp. at 901, cited with approval by Goldberg v. Kelly, cit. *supra,* 397 U.S. at 261, 90 S. Ct. 1011. There are ways by which the State can protect itself, even in the welfare situation where recipients are often judgment proof, from undue dissipation of its funds. Hearings may be accelerated, and additional personnel employed. Furthermore, there are recoupment measures available which have been found constitutional. Goldberg v. Kelly, cit. *supra,* 397 U.S. at 266, 90 S.Ct. 1011; Snell v. Wyman, 281 F.Supp. 853 (D.C. 1968), aff'd 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969). Most pertinent in this context are Calif.Unempl.Ins.Cde. §§ 1375–1380 (liability for overpayments) and the penalty provisions of § 1260(b) itself, which mean that if, after a fair hearing, an individual is found to have refused suitable employment in a given week, he may forfeit his right to payments not only for that week but for as many as nine succeeding weeks. It is difficult to see how, with the latter provision, the State would be out of pocket even if cut-off under § 1257(b) is delayed somewhat to allow confrontation and cross-examination.

■ (3) The government's contention that the due process considerations held decisive in *Goldberg* should be confined to welfare situations has been disposed of by *Java,* cit. *supra.* The State argued in *Java,* as the federal government argues here, that the controlling factor in *Goldberg* was the "brutal need" which characterizes the case of the typical welfare recipient.

Reference is made to plaintiff Crow's financial situation, to the fact that she is married to an employed individual, and to the family's ownership of two (very used) automobiles. Defendants conclude with the argument that since Mrs. Crow does not lack "the very means to live" she is not entitled to "the extraordinary remedy of a predetermination hearing * * *."

Defendants misread *Java, Goldberg,* relevant California statutes, and the recent history of American jurisprudence. The right to confront and cross-examine adverse witnesses, where an important decision hinges on a question of fact, is *not* an "extraordinary remedy". It has been found by the Supreme Court to be constitutionally mandated "in almost every setting". Goldberg v. Kelly, cit. *supra*, 397 U.S. at 269, 90 S.Ct. 1011. It is *welfare,* not unemployment compensation, or government employment, or garnishment proceedings, which was for the longest time deemed outside the protections of the due process clause. The Supreme Court invoked the "brutal need" of the welfare client, not to give him special rights not enjoyed by others, but as part of the balancing process which had been employed in previous due process cases, e. g. Sniadach v. Family Finance Corp., 395 U.S. 337, 341–342, 89 S.Ct. 1820, 1822–1823, 23 L.Ed.2d 349 (1969) ("prejudgment garnishment * * may * * * drive a wage-earning family to the wall"), and Greene v. McElroy, 360 U.S. 474, 508, 79 S.Ct. 1400, 1419, 3 L.Ed.2d 1377 (1959) ("petitioner's work opportunities have been severely limited * * * "). It would be anomalous indeed if the Supreme Court's extension of procedural guarantees to welfare eligibility determinations was used to justify a restriction of similar rights previously recognized in other areas.

■ (4) The Court now moves, perhaps cumbrously, to the *ad hoc* balancing process utilized in recent cases of this sort. "[One's] constitutional right to procedural due process entitles him to a quality of hearing at least minimally proportioned to the gravity of what he otherwise stands to lose through administrative fiat." Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L. Rev. 1439, 1452 (1968). While engaging in this comparison of interests, we repeat that it is clear that a pre-determination hearing, with the right to confront and question witnesses *is the constitutional norm, and not the exception,* as defendants would imply, *when "government action seriously injures an individual",* and where the crucial decision is based upon facts alleged by a third party. Greene v. McElroy, cit. *supra* at 496, 79 S.Ct. at 1413.

■ It cannot be doubted that plaintiff herein has shown "serious injury" from the government procedures complained of. She is a member of a class for which both courts and legislature have found unemployment compensation a necessary last-ditch safeguard against being thrust upon public charity. See Java v. California Dep't, etc., cit. *supra* 317 F.Supp. at 878; Calif. Portland Cement Co. v. Calif. Unempl. Ins. Appeals Bd., 178 Cal.App.2d 263, 3 Cal.Rptr. 37 (1960); Calif.Unempl.Ins.Cde. §§ 100, 101. She was found initially eligible for benefits, had begun receiving said benefits, but was cut off from them upon receipt by the Department of third party information which, in the Department's opinion, justified a finding that she had refused suitable employment. The injury to her was compounded when the Department informed her that she would be subject to the maximum "penalty period" imposed by § 1260(b).

The fact that Mrs. Crow was vindicated on appeal and won refund of wrongly withheld benefits does not affect the gravity of the harm caused her. On the contrary, the Court notes that the median six week period required before witnesses are cross-examined on appeal, and the thirty-two per cent of appellants who wait during that time and then are found worthy of relief, together make this case indistinguishably close to *Goldberg.*[2]

The defendants have attempted to differentiate Mrs. Crow's case from others cited above on the ground that while the plaintiffs in *Java, Sniadach,* etc. could point to takings of property or entitlements clearly theirs, Mrs. Crow was never really eligible for benefits for the

---

2. "[We note] the startling statistic that post-termination fair hearings apparently override prior decisions to terminate benefits in a substantial number of cases. * * * in the fair hearings on discontinuance which reached decision from

week here concerned. Under California's system, eligibility is dependent not only on an initial finding of qualification such as was involved in *Java,* but on independent, weekly findings of continued "availability" for employment. Calif.Unempl.Ins.Cde. §§ 1253(c), 1257 (b).

This theory is redolent of older vested rights concepts which still enjoy considerable life in the law of due process. If a person can point to personal possessions, or wages, or a position of public employment, that are clearly his, he is in a better position to argue procedural rights if an attempt is made to take that "property" without a prior hearing. Sniadach v. Family Finance, etc., cit. *supra;* Slochower v. Bd. of Higher Educ., etc., 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Klim v. Jones, 315 F.Supp. 109 (N.D.Calif.1970). But however useful they may be in some cases, these concepts become burdensome in others. Welfare and unemployment compensation schemes both involve an

initial decision *re* general eligibility, followed by periodic determinations that the applicant's circumstances have not changed in such a way as to affect that first decision. It is most difficult to say at any point in the proceeding whether the recipient's right to further payments is "vested" or not, and the Court in *Goldberg* made no such distinction.[3]

■ The key, then, to recent cases is not whether the entitlement is vested but whether it is contested. When an individual is deprived of a statutory benefit which he has previously enjoyed due to an adverse finding where factual issues are in dispute, and where the agency concerned has acted upon third party information, the ancient and "relatively immutable" jurisprudence of *Greene, Sniadach,* and *Goldberg* comes into play. It is in a case such as Mrs. Crow's, where the claimant said she was offered no job, and where the interviewer disagreed, saying he had learned she refused employment, that confrontation and cross-examination are necessary.[4]

April through August of this year, only 50 of 78 cases, or 64%, were affirmed." Kelly v. Wyman, cit. *supra,* 294 F.Supp. at 901 (text and accompanying note).

"Thus, the interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens." Goldberg v. Kelly, cit. *supra,* 397 U.S. at 266, 90 S.Ct. at 1019.

3. It might be appropriate to compare the case histories of the plaintiffs in Kelly v. Wyman, cit. *supra,* with that of plaintiff herein. In *Kelly,* Mrs. Angela Velez, a welfare recipient, was terminated after her landlord reported nocturnal visits to the Velez home by Mrs. Velez' husband. The post-termination hearing found the information to have been false, and benefits wrongfully terminated. Another plaintiff was terminated following an agency finding, without a "fair hearing", that she had been working for the local Board of Education while receiving benefits. Plaintiff herein, Mrs. Ellenmae Crow, was receiving benefits, but was terminated when her Department interviewer told her he had spoken with a Mr. Spray, of Goodwill Industries, who had told him that Mrs. Crow had turned down a job offer. Mrs. Crow vigorously

contested that an offer had been made, but nonetheless had to await appeal procedures before being able to present the results of her own direct questioning of Mr. Spray.

It seems clear that in all three cases, recipients previously found eligible, who had begun to receive benefits, were terminated without prior "fair hearings" on the basis of contested, third party information regarding conduct subsequent to the initial determination of eligibility.

4. The Court must emphasize what it is *not* deciding in the instant case. It is *not* deciding what procedures are necessary when the only dispute is as to the application of statutes or regulations to uncontested facts. See *Goldberg,* 397 U.S. at 268, footnote 15, 90 S.Ct. 1011, 25 L.Ed.2d 287. Nor is it treating of factual problems "of general or common application" to an entire class of recipients, e. g., the trade dispute situation dealt with by Calif. Unempl.Ins.Cde. § 1262.5. Finally, the Court expresses no opinion of procedures where relevant facts are ascertainable by reference to "objectively determinable" data, e. g. medical reports, and where ample time and resources are available to all parties for gathering such data. See Messer v. Finch, 314 F.Supp. 511 (E.D.Ky., 1970). See also Kelly v. Wyman, cit. *supra,* 294 F.Supp. at 905.

This adverse finding, based on second-hand information which was ultimately proven inaccurate, deprived Mrs. Crow not only of payments for the particular week, but for nine weeks beyond that. Especially in light of this § 1260(b) "penalty", impact of the finding cannot be confined to that week in which it was rendered; its real effect was to reverse, without a fair hearing, the initial determination of eligibility. *Goldberg* and *Java* are clearly in point, and will be applied by this Court.

Accordingly, IT IS HEREBY ORDERED that the State defendants herein, their successors in office, agents and employees, are permanently enjoined from enforcing Calif.Unempl.Ins.Cde. §§ 1257(b) and 1260(b) in such a way as to result in termination, prior to a hearing consonant with the principles of Goldberg v. Kelly, cit. *supra*, of unemployment compensation benefits due persons who have timely contested factual allegations brought under the aforementioned statutes.

Execution of this Order will be stayed ten (10) days from the date of its filing. Any further stay will be granted only upon a proper motion and showing by defendants.