Diane **WHEELER** b/n/f Margaret Wheeler, and all other persons similarly situated

v.

**STATE OF VERMONT,** Department of Employment Security, and Stella B. Hackel, Commissioner of Employment Security.

Civ. A. No. 6227.

United States District Court, D. Vermont.

Dec. 23, 1971.

As Modified March 16, 1972.

James J. Cormier, Jr., Vermont Legal Aid, Inc., Rutland, Vt., and John Dooley, III, Vermont Legal Aid, Inc., Burlington, Vt., for plaintiffs.

Raymond S. Fitzpatrick, Vermont Dept. of Employment Security, Montpelier, Vt., for defendants.

Before WATERMAN and OAKES, Circuit Judges, and LEDDY, District Judge.

OAKES, Circuit Judge:

This case presents the question, decided 2–1 against a similarly situated plaintiff in another three-judge court

case in the Second Circuit,[1] whether a state unemployment compensation agency must conduct a Goldberg v. Kelly[2] hearing before terminating an individual's unemployment benefits. Put another way, does the Social Security Act, §§ 303 (a) (1), (3), 42 U.S.C. §§ 503(a) (1), (3), or the due process clause of the United States Constitution, or do both, require that a pretermination hearing be given a recipient of unemployment insurance payments? For the reasons set forth below, we conclude that such a pretermination hearing is required.

On March 11, 1971, plaintiff requested the convening of a three-judge court pursuant to 28 U.S.C. § 2281, an injunction, and a declaratory judgment under 28 U.S.C. §§ 2201 and 2202. On March 24 the motion for the convening of the three-judge court was granted. Jurisdiction is asserted and present under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), (4). See Johnson v. Harder, 438 F.2d 7, 12 (2d Cir. 1971).

Plaintiff Diane Wheeler (hereinafter referred to as "claimant"), who in August of 1970 had voluntarily left her job as an inspector for a law printer in Rutland, Vermont, was employed by a Rutland mailing company from November 24, 1970, to January 13, 1971, at which time she was laid off on account of "lack of work." Shortly thereafter she filed a claim for unemployment benefits and was declared eligible. On January 27 claimant was given a "benefit rights interview" as well as a "fact finding interview" concerning her previous separation from the law printer's employment, both interviews being conducted by the Department of Employment Security's office manager. Claimant dutifully filed a "continued claim" for each week of unemployment and received $36.00 benefits for each of the weeks ending January 23, January 30,

February 6, and February 13, 1971. At the "benefit rights interview" her rights and duties as a claimant were explained to her, the duties including that of seeking and accepting suitable work without undue restrictions on availability. The "fact finding interview" resulted in a decision not to charge her first employer's account, on the ground that she had voluntarily left that job.

On February 17 Miss Wheeler was given a "periodic interview" by Mary Gilmore, an employee of the state agency in the Rutland office, during which she was given a Form B–57 entitled "Direction to Actively Seek [sic] Work." This form reminds a claimant of his or her statutory duty to seek work actively, 21 V.S.A. § 1343(3), and directs him to list the names of the firms contacted before filing the next claim for benefits. Each form also contains an explicit handwritten "Direction," in this case reading as follows:

> You are to contact three places of employment as a routine factory worker or general office clerk between 2/17/71 and 2/24/71. These are to be personal contacts in the Rutland area.

When on February 24 claimant filed for benefits covering the week ending February 20, she was given a "fact finding interview" by another office employee in Rutland, Elizabeth Baird, at which time she was questioned about her compliance with the previous week's "Direction." Claimant signed a Fact Finding report filled out and read to her by the interviewer, which stated in pertinent part:

> I did not actively seek work as directed by making personal contacts during the week of 2/17/71 and 2/24/71 because I answered 2 ads in the Rutland Herald. I talked to an individual in personnel in one ad & was informed I had the qualifications for the job and I

1. Torres v. New York State Dep't of Labor, 321 F.Supp. 432 (S.D.N.Y.1970) (2–1 decision), adhered to in 333 F.Supp. 341 (S.D.N.Y. Oct. 26, 1971) after vacation and remand, 402 U.S. 968, 91 S.Ct. 1685, 29 L.Ed.2d 133 (1971), in light of California Dep't of Human Resources Development v. Java, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971).

2. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

would be notified if I got the job. I felt fairly sure after the phone conversation that I had the job and therefore, made no other contacts.

On the same day, February 24, claimant was given another Form B–57 ("Direction to Actively Seek Work") reading essentially the same as the previous one, but without the prior limitation of the work area to Rutland. This form was also filled out by the Department employee, Elizabeth Baird.

On the following day, February 25, a "Determination" was made by the local office manager, John S. Czachor, who also acts as a Claims Examiner. The "Determination" appeared on a printed form (Form D–6), with only the names of the employee and last employer and relevant dates typed onto it. The form read as follows:

Inasmuch as you, having been properly directed by this office of the Department of Employment Security on February 17, 1971, to make an independent effort to secure work, have failed to present competent evidence that you did seek work as directed, your claim is denied for the week ending February 20, 1971 and each week such failure continues in accordance with 21 VSA 1343(3).

At the bottom of the form appears this additional language:

Appeal from this decision must be filed within ten (10) days of its receipt.

On March 3 claimant filed an additional claim for the week ending February 27. At a "fact finding interview" on

the same day she signed a Fact Finding Report read to her by one of the Rutland office employees (this time Mary Gilmore), which stated that:

I did not actively seek. work as directed by the local office because I did not have transportation during the week ending 2/27/71.

That same day a "Determination" adverse to claimant was made by the office manager/Claims Examiner—the same person incidentally who had found she had left her earlier employer voluntarily—for the week ending February 27. The "Determination" was made on the basis of the "fact finding reports" on file and not as a result of any further hearing or, so far as appears, attempt to elicit any other evidence, from the claimant or otherwise. On March 12 the office manager issued a "Corrected Decision," also adverse to claimant, for the week ending February 20; no reason appears for this "Corrected Decision," made on another form but in language substantially the same as that of the earlier decision.

Claimant duly appealed the adverse "Determinations" of February 25 and March 3, and a hearing was held on March 22 before a departmental Appeals Referee, with claimant and counsel present. On March 30 the Appeals Referee sustained the "Determinations" of the Claims Examiner.[3] No appeal was taken from that decision, and no claim for payments was filed with respect to any week after the week ending February 27. Claimant's suit is thus for two weeks of payments—the weeks ending

---

3. The "findings" of the Appeals Referee as to the February 20 week read in part as follows: "Claimant did not make any personal contacts, as directed, because she did not feel that it was worthwhile." His conclusion was based on failure to comply with the statutory requirement of 21 V.S.A. § 1343(3) that the employee be "available for work . . .. [and] make such other efforts to secure suitable work as the commissioner may reasonably direct . . . ."

As to the February 27 week the referee found:

Claimant is willing to accept work for which qualified at the prevailing wage, on the first or second shift, but did not make any personal contacts during said period as she had no transportation, but did respond to a help wanted ad. From March 3, 1971 to March 22, 1971 claimant made one personal contact seeking employment.

He concluded that "when, in a more than three week period she made only one personal contact seeking work, she fails to show a genuine attachment to the labor market."

February 20 and 27—claimed but not received.

It is conceded by claimant that the hearing before the Appeals Referee comports with due process of law. She contends, however, that it is at the stage of determination by the Claims Examiner that due process was not had; as a special procedural omission she points to the fact that the "fact finding interviews" on which the "Determinations" were based were not conducted by the person making the decision. Claimant also relies upon the lack of prior notice that the fact-finding process was to take place, the lack of opportunity to know the specific reasons for depriving her of benefits, and the lack of opportunity to consult with counsel or to confront or cross-examine witnesses before the decision was made.

■ At the outset we are met by the Department's claim of mootness, based upon claimant's concededly fair hearing before the Appeals Referee. Since this case originated as a class action, even though it has not been denominated as such until now, and since claimant's benefits were terminated before a hearing was held, we agree with the Third Circuit in Mindo v. New Jersey Department of Labor & Industry, 443 F.2d 824 (3rd Cir. 1971), that this action is not moot, a conclusion that was reached sub silentio in California Department of Human Resources Development v. Java, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), and explicitly in Crow v. California Department of Human Resources, 325 F.Supp. 1314, 1316 (N.D.Cal.1970). See also Lasker, J., in Torres v. New York State Department of Labor, 321 F.Supp. 432, 438 (S.D.N.Y.1970) (2–1 decision) (dissenting opinion).

■ Thus, the issue is not moot. Nor is exhaustion of state remedies required. King v. Smith, 392 U.S. 309, 312 n. 3, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Sostre v. Rockefeller, 312 F.Supp. 863, 881–883 (S.D.N.Y.1970), modified on other grounds, Sostre v. McGinnis, 442

F.2d 178 (2d Cir. 1971); see Bacon v. Rutland R.R., 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538 (1914). We therefore proceed to an analysis of the procedures leading up to nonpayment of benefits which the state contends constitute a fair hearing. While the Department's own Fact Finding Manual, which outlines "procedures relating to the fact finding function," points to the need for "considerable team work between the fact finder and the claims examiner" and for the fact finder's recording of information so as to permit "the rendering of determinations . . . with the utmost clarity and impartiality," it also—for our purposes—carries with it its own legal self-destruct mechanism when it points out that:

> The fact finder is the key to the nonmonetary determination process. The extent of his proficiency with respect to obtaining and documenting factual information regarding an issue determines, in a very real sense, the quality of the work of the Claims Examiner. Employment Security Manual, Part VI, 1013.

This separation of the fact-finding from the decision-making process was said to be "fatal to the constitutional adequacy" of the New York welfare procedures in Goldberg v. Kelly, 397 U.S. 254, 268, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

While it might be said that notice that benefits will not be paid is implied in the "Direction to Actively Seek Work," and while it may be that claimants are fully apprised, verbally and otherwise, of their duties in this regard and the consequences of their failure to perform, a statement on the "Direction" that a hearing as to compliance will be held at a given time and place, together with advice that counsel may be present to assist, and that any witnesses may be confronted and cross-examined, would appear more closely to comport with the Goldberg procedures. The requirements of an impartial decision-maker and a "meaningful" hearing have been spelled

out in *Goldberg* and elsewhere; [4] we need not determine here whether they were met as applied to this claimant, but simply call them to the attention of the Department for future reference.

We thus face the question whether this procedure falls without the federal statutory mandate of § 303(a) (1) of the Social Security Act, 42 U.S.C. § 503(a) (1), that the state method of administration be "reasonably calculated to insure full payment of unemployment compensation when due." *See* California Department of Human Resources Development v. Java, *supra; cf*. Rosado v. Wyman, 397 U.S. 397, 420–421, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), aff'd after remand, 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971); King v. Smith, *supra*, 392 U.S. at 317, 333, 88 S.Ct. 2128. The evidence here shows that on the average it takes approximately 37.5 days from a time a claimant appeals from a Claim Examiner's determination until the Appeal Referee's decision is rendered. This delay alone would be enough to warrant a finding that the procedure as we have above described it is not "reasonably calculated" to produce full payment "when due." True, the California delays in benefit receipts suspended upon an employer's appeal, considered in *Java, supra*, involved a longer period of time— seven to ten weeks (402 U.S. at 129, 91 S.Ct. 1347). But a five-week delay is also unreasonable, and we disagree with the view of the three-judge court in *Torres, supra*, 321 F.Supp. at 438, that when a determination of ineligibility is made the benefits cannot be said to be "due" within the statute, since this is the very issue for consideration.

Indeed, one reading of the Supreme Court's order, 402 U.S. at 968, 91 S.Ct. at 1685, 29 L.Ed.2d 133 vacating and remanding *Torres* "for reconsideration in light of this Court's decision in" *Java*, would be that the Supreme Court wanted the district court to weigh the New York administrative delays in the light of the federal statutory requirements.

Even if we were wrong on the statutory point, however, we agree with Mr. Justice Douglas, concurring in *Java*, 402 U.S. at 135, 91 S.Ct. 1347, Judge Lasker dissenting in *Torres*, 321 F.Supp. at 438, the California district court in *Crow, supra*, and the district court in *Java* that unemployment compensation benefits cannot be treated differently from the welfare benefits in Goldberg v. Kelly, *supra;* the right to wages free from prejudgment attachment protected in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); the right to a tax exemption granted in Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); and the right to public employment articulated in Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956).[5] Indeed, the Supreme Court, albeit in a first amendment context, has held denial of unemployment compensation benefits subject to constitutional restraint, Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), expressly rejecting the "right-privilege" distinction which is happily dying a slow conceptual death. *See* Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439 (1968).

The fact that unemployment benefits are paid without reference to need, that is to say, without reference to a means test, does not mean that a given claimant's need is qualitatively different from that of a welfare recipient. While such need may from time to time not be, in *Goldberg's* turn of phrase, "brutal," speaking quantitatively, it is nonetheless compelling in the constitutional sense; the payment of unemployment benefits to those entitled to them permits retention of the basic human dignity that past

4. *E. g*., Crow v. California Dep't of Human Resources, 325 F.Supp. 1314 (N.D.Cal. 1970).

5. *But cf*. Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971)

(not unconstitutional to reduce social security benefits by amount of workmen's compensation payments).

accomplishment alone merits, avoiding, in Macaulay's stark phrase, sinking, after many vicissitudes of fortune, into "abject and hopeless poverty." *Cf.* Johnson v. Harder, 438 F.2d 7, 12 (2d Cir. 1971), referring to the "right to exist in society."

In reaching this decision we are not unmindful of the administrative problems that the Department has called to our attention. Apparently the Department had over 38,000 claims with almost $8 million in benefits paid in 1970, and from January 1 to October 20, 1971, over 24,-000 claims, involving over $10 million in benefits paid. But we are not talking about very many hearings. In 1970, some 837 claimants were directed "to actively seek work" and determinations at the district level were necessary in only a relatively small number of cases. Terminations occurred in possibly as few as 85–100 cases, or even as few as ten.[6] There may be a number of other cases in which benefits are terminated for other causes without a hearing complying with basic Goldberg v. Kelly requirements.

We trust that the Department will respond readily to the requirements hereby imposed. It has total flexibility to do so as it sees fit; it could do so, *e. g.*, by way of hiring an additional Appeals Referee or two or three,[7] so that appeals may be handled with such promptness as to minimize the delays from the Claim Examiner's determinations to the decisions on appeals not taken to the board level (and the cost of paying benefits in the interim also). As one alternative, the Department might turn its cadre of "fact finders" into trained, impartial decision-makers, although were it to do so perhaps the function of issuing the "Direction to Actively Seek Work" would then more properly be performed by someone other than the "fact-finders."

Undoubtedly minimal notice of whatever hearing is devised will have to be given on the issue whether work has been "actively" sought, together with advice as to right to counsel and to confront and cross-examine witnesses. *See generally* Mott v. Betit, Docket No. 6100 (D.Vt.1970).

The Department's administrative skill in devising prompt procedures will largely determine the degree of the impact on the public fisc. We are confident, on the basis of the Department's past performance, that it will perform with the highest grade of administrative capability, rendering that impact inconsequential, even while it conforms to the fundamental fairness this decision requires.

We designate this a class action under Fed.R.Civ.P. 23(b) (2),[8] but only as to persons whose benefits were terminated from and after March 11, 1971, for failure actively to seek work or for failure to show an adequate "attachment to the labor market." Since Robert Carpenter, an additional claimant and a member of the plaintiff's class also represented by Vermont Legal Aid, Inc., has sought to intervene, we hereby grant his motion. Inasmuch as plaintiff did not have fair hearing on February 25 and March 3, 1971, judgment is ordered entered for the two weeks of payments, a total of $72.00 (see 335 F.Supp. 859–860) which she should have received for those weeks, together with her taxable costs; but inasmuch as, while this action was pending in the district court, claimant after a fair hearing before a departmental Appeals Referee was found not entitled to keep the payments and that determination is unappealed from and is a final determination, defendants may offset $72.00 against the judgment.

Judgment in accordance with the opinion; orders to follow.

---

6. Meaningful statistics are hard to obtain since the Department's 1970 Annual Report includes determinations in "Direction to Actively Seek Work" cases in its "All Other" categories totaling 399 (p. 46), of which some 50 were appealed.

7. Until recently the Department had only one Appeals Referee and now has only two.

8. *See* Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968).