490 F.2d 580
 Ellenmae CROW et al., Plaintiffs-Appellees, American
Federation of Labor and Congress of Lndustrial
Organizations and United Steelworkers of
America, AFLCIO, Intervenor
Plaintiffs-Appellees,
v.
CALIFORNIA DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT et al.,
Defendants-Appellants, United States of America,
Intervenor Defendant-Appellant.
 Nos. 26749, 71-1045.
 United States Court of Appeals, Ninth Circuit.
 Dec. 14, 1973.
 
 Charles Liebert Crum, Atty. Dept. of Labor, Washington, D.C., Asher Rubin, Deputy Atty. Gen. (argued), William P. Spohn, Asst. U.S. Atty., San Francisco, Cal., Morton Hollander and Patricia S. Baptiste, Attys. Dept. of Justice, Robert E. Kopp, Atty. (argue), Dept. of Justice, Washington, D.C., for defendants-appellants.
 Steven P. Berzon, Stefan M. Rosenzweig, Legal Aid Society of Alameda County, Oakland, Cal., K. Randlett Walster, Santa Cruz, Cal., Ono, Manley, Schwartz & Kubota, San Jose, Cal., Contra Costa Legal Services Foundation, Richmond, Cal., Fred H. Altshuler and Lucy K. McCabe (argued), San Francisco, Cal., J. Albert Woll, Washington, D.C., Bernard Kleiman, Chicago, Ill., for plaintiffs-appellees.
 
 
 1
 Before DUNIWAY and TRASK, Circuit Judges, and BATTIN,* District judge.
 
 BATTIN, District Judge:
 
 2
 Ellenmae Crow commenced this class action against the State of California Department of Human Resources Development[1] (hereinafter 'department'), seeking reinstatement of her entitlement to unemployment insurance benefits and an order requiring their continued payment until she was afforded a 'Goldberg' type due process hearing.[2]
 
 
 3
 Ms. Crow, who had previously qualified for and was receiving unemployment benefits, was notified by the Department of an employment opportunity. At an interview for this employment opportunity, it came to light that Ms. Crow, if hired, would leave the job if elsewhere offered higher wages. As a consequence, Ms. Crow was not offered employment.
 
 
 4
 A condition of receipt of benefits from the Department is that the claimant be ready, willing and able to work. Thus, Ms. Crow was advised by the Department that she would have to explain the circumstances surrounding the job interview before her benefit check would be released. She filled out the required form but left blank the question, 'Was any work offered you?' On the basis of this omission, her check was withheld and she was referred to a Department claims interviewer, who concluded that Ms. Crow had, at the 'job interview', 'precluded an offer of suitable work and accordingly was not eligible to receive unemployment compensation benefits for a period of ten weeks.' A subsequent 'pre-appeal' interview, with Ms. Crow in attendance, upheld the withholding of benefits.
 
 
 5
 Subsequent to filing this action, Ms. Crow requested an administrative hearing, and in lieu of a requested temporary restraining order, the district court withheld action pending the hearing.
 
 
 6
 The Hearing Referee ruled in favor of Ms. Crow, finding that a claimant could express a desire for higher wages without being guilty of precluding employment if such expression did not convey a negative attitude. Thus, the Referee's decision was based solely on the legal affect of what had transpired at the job interview, although it necessarily characterized Ms. Crow's conduct as permissible. Notwithstanding this administrative result, the district court reached the merits of Ms. Crow's complaint and concluded:
 
 
 7
 'When an individual is deprived of a statutory benefit which he has previously enjoyed due to an adverse finding where factual issues are in dispute, and where the agency concerned has acted upon third party information, the ancient and 'relatively immutable' jurisprudence of Greene, Sniadach, and Goldberg[3] comes into play. It is in a case such as (this) . . ., where the claimant said she was offered no job, and where the (defendant department's) interviewer disagreed, . . . (based on his understanding of third party information), that confrontation and cross-examination are necessary.' Crow v. Cal. Dept. of Human Resources, 325 F.Supp. 1314, 1319 (N.D.Cal.1970).
 
 MOOTNESS
 
 8
 The Supreme Court's remand of Burney[4] implicitly indicates that a district court's conclusion against mootness permits review of at least that question. We concur with the district court's finding that this case is not moot, and find it to be of that type which is capable of repetition yet potentially evading review. The intervention as a party plaintiff of the AFL-CIO precludes any other conclusion.
 
 MERITS OF PLAINTIFF'S CLAIM
 
 9
 It is the opinion of this court that the record does not reflect a situation necessitating a wholesale application of the principles enunciated by Goldberg and its progeny. Moreover, should we erroneously construe the record, the procedures employed by the Department in this case and the situations which it encompasses, in our opinion, satisfy the requisites of due process. That procedure, which includes an informal hearing in the presence of the claimant prior to the administrative determination regarding the continued eligibility for unemployment compensation, was employed here and is employed in all similar cases. That procedure is the subject matter of an affidavit filed in this case and which, because of its obvious importance, is set out in the margin.[5]
 
 
 10
 First, we disagree with the district court's finding that the termination here was based upon third party information. The situation which Ms. Crow brings to the fore is that in which the claimant is the source of information upon which the continued eligibility claims examiner predicates his decision of ineligibility. Goldberg indicates quite clearly that a pretermination hearing is mandated only where the questioned agency action is challenged as resting upon incorrect or misleading factual premises or upon misapplication of rules or policies under the facts of the particular case. Goldberg v. Kelly, supra, 397 U.S. at 268, 90 S.Ct. 1011. Here, the facts presented the eligibility examiner indicated that the claimant, when asked, admitted that she would leave any job offered for a subsequent, more lucrative position. While it may be true that information from the job opportunity interviewer may have formed a part of the conclusion by the eligibility interviewer, that information, insofar as the record indicates, differed in no material respect from that presented to the Department's interviewer by Ms. Crow. Thus, we are constrained by the record to conclude that we are here dealing not with agency misconstruction of a factual situation, but rather, and if at all, with that aspect of Goldberg which interposes the Fourteenth Amendment in situations challenged as an agency's misapplication of rules or policies.
 
 
 11
 Second, we find no basis for a claim that there has been misapplication of policies or rules in this case. The rule confronting the Department's examiner required termination if a claimant had 'precluded' employment. This claimant was not offered employment because of her candid admission that she would leave a job if offered more remuneration elsewhere. We find it logically impossible to label the examiner's action as a misapplication of rules or policies.
 
 
 12
 And, third, should we take too much liberty with the record by concluding there was here no erroneous factfinding by the Department, we nonetheless must reverse the court below for we find that due process is accorded by the Department's procedures governing this situation. Due process is, of course, a flexible concept, the requirements of which are not immutably fixed but frequently vary with the type of proceeding involved. Hannah v. Larche, 363 U.S. 420, 440, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).
 
 
 13
 'Consideration of what procedures due process may require under any given circumstances must begin with a determination of the precise nature of the government function ivolved as well as of the private interest that has been affected by governmental action * * *.' Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).
 
 
 14
 We conclude that the protection of persons receiving unemployment compensation benefits against capricious and arbitrary governmental action is adequately safeguarded in this case. There is no need to further burden the procedures by requiring a full evidentiary hearing in the situation such as the one at hand where the record reflects the absence of a factual dispute or misapplication of rules and regulations.
 
 
 15
 Goldberg and its progeny do not dictate a contrary result. Goldberg held, in effect, that prior to termination of welfare benefits a due process hearing was required. Close examination of the decision requires the conclusion that the strict principles it enunciates are inapposite in the situation here at hand. Goldberg, in fact, makes clear that some governmental benefits can administratively be terminated without affording the recipient a pretermination hearing. Goldberg, supra, 397 U.S. at 263, 90 S.Ct. 1011. The Goldberg rationale is based, at least in part, upon the fact that a welfare recipient will, upon termination, be faced with a grievous loss. No such loss exists in this situation. Here, we deal with unemployed persons who, as a condition to receive unemployment compensation benefits in the first instance, must be able and willing to work and subsequently in reasonably good health and a bona fide member of the work force.[6] While that distinction alone may be sufficient to take this case out of the Goldberg context, several others indicate the probity of the conclusion. For example: The source of funds used to pay unemployment benefits is different than the source of funds used to pay welfare; and the state's interest in unemployment compensation is different because it is that of a stakeholder, rather than a benefactor. Just as the context differs, so do the requirements of due process.[7]
 
 
 16
 We find the Constitution to demand here no more than is afforded by the Department's system, even though it does not require pretermination confrontation and cross-examination.[8] In Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the Supreme Court of the United States upheld a procedure which lacked the right of confrontation and cross-examination of witnesses where the claimant could present reports and testimony in rebuttal of written reports and testimony submitted against him. Substantially the same procedure is employed by the Department. Though Richardson arose in the context of social security disability benefits, the rationale employed (that due process is satisfied if procedures are essentially fair in view of the circumstances) is equally applicable here. General principles of fundamental fairness under the circumstances govern here and require the conclusion that due process was afforded in the present situation.
 
 
 17
 Therefore, we reverse this case and remand it to the district court for further proceedings not inconsistent with this opinion.
 
 
 18
 DUNIWAY, Circuit Judge (concurring and dissenting).
 
 
 19
 I concur in the holding that the case is not moot, but I cannot agree that appellant and the class of persons whom she represents are not entitled to a due process type hearing before their right to unemployment insurance benefits may be terminated.
 
 
 20
 I do not believe that the majority has successfully distinguished Goldberg v. Kelly, 1970, 397 U.S. 254, 90 S.Ct. 1011, 23 L.Ed.2d 287. I think that Goldberg is directly in point here and that it requires affirmance of the judgment of the district court. The majority attempts to distinguish Goldberg on several grounds. I consider them seriatim.
 
 
 21
 First, the majority says that the decision to terminate Ms. Crow's benefits was based on information that she furnished, and not on third party information. In so holding, the majority disagrees with a contrary finding by the district judge, which I believe to be fully supported by the record and not clearly erroneous. There was a factual dispute as to what occurred at Ms. Crow's job interview, and the examiner apparently relied on information furnished by the employer's interviewer. Ms. Crow had no chance to confront and question him on the crucial questions: did he offer her a job and did she refuse it? Ms. Crow said that she had not been offered a job (R. 125); the interviewer apparently reported that he had offered the job and she had refused it. (R. 127, 128-9, 131) The judge's finding (325 F.Supp. at 1318, 1319) is supported by the record.
 
 
 22
 Second, the majority says that there was no misapplication of policies or rules in this case. Again, I am compelled by the record to disagree. The theory is that Ms. Crow 'precluded' employment by telling the employer's job interviewer that she would leave the employer's job if she could get higher pay elsewhere. Ms. Crow had been earning $2.75 per hour. The prospective job paid $2.20. She told the Department interviewer that 'the wage sounded pretty low and (she) was told by the interviewer that perhaps if she did interview for the job, she might be able to obtain a higher starting wage.' (R. 88) Under Benefit Decision 6429 of the California Unemployment Insurance Appeals Board, Ms. Crow should have been told that $2.75 was too much to demand from Goodwill. As the Appeals Board referee said, 'If her demands are considered unreasonable, the claimant should be advised of that fact so that she will have an opportunity to pattern her demands to the prevailing wage.' (R. 91) Thus, the blaim for Ms. Crow's misfortunes arising from her telling the truth rests on her Department interviewer, who neglected to follow a policy promulgated by the California Unemployment Insurance Appeals Board.
 
 
 23
 Third, the majority says that 'the Goldberg rationale is based, at least in part, upon the fact that a welfare recipient will, upon termination, be faced with a grievous loss. No such loss exists in this situation.' I cannot agree. No doubt it is true that some wage-earners who are covered by unemployment insurance have other resources with which to support themselves while looking for another job. But I believe that we can take judicial notice that the vast majority of wage-earners, especially those in low paid jobs, have no such resources, but are wholly dependent for their and their families' livelihood upon their wages. Loss of a job, like pre-judgment garnishment, 'may as a practical matter drive a wage-earning family to the wall' (Sniadach v. Family Finance Corp., 1969, 395 U.S. 337, 341-342, 89 S.Ct. 1820, 1822, 23 L.Ed.2d 349). For most wage-earners, loss of a job is more than a 'grievous loss'; it is a calamity. The trial judge found that Ms. Crow suffered 'serious injury' (325 F.Supp. at 1318, and see R. 18-21). The majority does not quarrel with this finding. Assuming that 'grievous loss' is required, I am unable to distinguish it from 'serious injury' in this context. Ms. Crow suffered the same kind of loss that the plaintiffs in Goldberg suffered, loss of necessary income.
 
 
 24
 Fourth, the majority says that the source of funds used to pay unemployment benefits is different from the source of funds used to pay welfare; and that the state's interest in unemployment compensation is different because it is that of a stakeholder, rather than a benefactor.
 
 
 25
 Again, I am unable to agree. The source of the funds in both cases is taxes. In the case of welfare, the taxes are levied on the public as a whole. In the case of unemployment compensation, the taxes are levied on the wage-earners' employers. This would seem to me to give to wage-earners an even greater stake in the funds than welfare recipients have in funds appropriated for welfare payments. If relevant at all (and the majority does not tell us how it is relevant), the difference strengthens rather than weakens the claim to due process asserted by Ms. Crow and those whom she represents. Moreover, the state is no mere stakeholder; it owns the money that it collects and the Federal government contributes to the funds. As in Goldberg, the benefits here involved 'are a matter of statutory entitlement for persons qualified to receive them.' (397 U.S. at 262, 90 S.Ct. at 1017.)
 
 
 26
 Furthermore, one purpose of unemployment insurance is to prevent people from going on welfare; it serves 'to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity.' California Human Resources Dept. v. Java, 1971, 402 U.S. 121, 131-132, 91 S.Ct. 1347, 1354, 28 L.Ed.2d 666. The two programs are intertwined, both provide aid to people unable to work, and there is no reason to distinguish them for purposes of this case. As the Supreme Court has said, in discussing unemployment insurance benefits, 'the payments to the employees were not made to discharge any liability or obligation of (the employer), but to carry out a policy of social betterment for the benefit of the entire state.' N.L.R.B. v. Gullett Gin Co., 1951, 340 U.S. 361, 364, 71 S.Ct. 337, 340, 95 L.Ed. 337. And in Goldberg, the Court went out of its way to suggest that 'relevant constitutional restraints apply as much to the withdrawal of public assistance benefits as to disqualification for unemployment compensation.' 397 U.S. at 262, 90 S.Ct. at 1017.
 
 
 27
 I conclude that Goldberg is squarely in point and that it requires a due process type hearing before unemployment compensation is terminated, at which there is an opportunity to confront and question a third party who has furnished information upon which the Department relies. See 397 U.S. at pp. 267-268, 269-270, 90 S.Ct. 1011.
 
 
 28
 I find nothing to the contrary in Richardson v. Perales, 1971, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842, cited by the majority. There, the Court carefully distinguishes Goldberg (402 U.S. at 406-407, 91 S.Ct. 1420).
 
 
 29
 I would affirm.
 
 
 
 *
 Honorable James F. Battin, United States District Judge, District of Montana, sitting by designation
 
 
 [1]
 The AFL-CIO has intervened as a party plaintiff; the United States has intervened as a party defendant
 
 
 [2]
 Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)
 
 
 [3]
 Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Goldberg, supra note 2
 
 
 [4]
 Indiana Employment Security Division v. Burney, 409 U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62 (1973)
 
 
 [5]
 The affidavit of the Administator of the California Unemployment Insurance program recites that: 'The interviewer is required to permit the claimant to explain the circumstances surrounding the issue of his eligibility. Notes are reported on a record of the interview as to what the employer has alleged. He is then given an opportunity to offer any statement he wishes in rebuttal. The interviewer asks specific questions to bring out all the facts. If the claimant's version does not agree with the employer's allegations, the employer is told what the claimant has said and given an opportunity to submit a rebuttal. In most cases, contact with the employer is by telephone. In some instances, he has written a letter and the decision is held up pending a reply. In most cases, the decision is arrived at during interview
 'Verification, when required, is obtained from any source such as labor unions, doctors, transportation companies, etc. If the claimant's statement and the employer's statement are at variance, both the claimant and the employer are permitted to produce or suggest witnesses who can testify to what he has alleged. When the evidence is equal and the contradictions cannot be resolved, the claimant is given the benefit of the doubt.
 'After all the pertinent facts have been introduced, the interviewer, after determining what policy and precedent requires, makes the decision either holding the claimant eligible or disqualified for benefits. If the benefits are denied, the reason for the denial is explained, and written decision is issued within two days after the denial.' (Record of Hearing 140-141.)
 
 
 [6]
 In 1931, Franklin D. Roosevelt, then Governor of New York, sent his Labor Commissioner, Frances Perkins, to Great Britain to study the British system of unemployment insurance. She discovered the British had confused poor relief with insurance, that they had disregarded actuarial principles, and that coverage was often expanded without regard for contributions. She cautioned against these errors and advised that any unemployment insurance program considered in this country should be based on a principle of limited payments with the retention of benefits to reserves in accordance with insurance principles. See D. Nelson, Unemployment Insurance, the American Experience 1915-1935, 167 (1969)
 
 
 [7]
 '. . . The sufficiency of procedures employed in any particular situation must be judged in light of the parties, the subject matter and the circumstances involved.' Ferguson v. Thomas, 430 F.2d 852, 856 (5th Cir. 1970); see also Grabinger v. Conlisk, 320 F.Supp. 1213 (N.D.Ill.1970)
 
 
 [8]
 See: Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961), cert. den., 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961)