[Civ. No. 51223. Second Dist., Div. Five. Jan. 25, 1979.]

AMERICAN FEDERATION OF LABOR—
CONGRESS OF INDUSTRIAL ORGANIZATIONS et al.,
Plaintiffs and Respondents, v.
EMPLOYMENT DEVELOPMENT DEPARTMENT et al.,
Defendants and Appellants.

814

**COUNSEL**

Evelle J. Younger, Attorney General, and Asher Rubin, Deputy Attorney General, for Defendants and Appellants.

J. Albert Woll, Marsha Berzon, Bernard Kleiman, Fred H. Altshuler, Stephen P. Berzon and Albert H. Meyerhoff for Plaintiffs and Respondents.

**OPINION**

HASTINGS, J.—This is an appeal from a judgment declaring that certain procedures of the California Employment Development Department (EDD) violated section 303(a)(1) of the Social Security Act (42 U.S.C. § 503(a)(1)), the due process clause of the California Constitution, and the due process clause of the United States Constitution. The superior court issued an injunction prohibiting the suspension of unemployment insurance benefits to continuing claim recipients who appeal an unfavorable decision regarding their eligibility. On August 4, 1976, the superior court granted plaintiffs' motion to be relieved from compliance with the class action manual, but did not certify this matter as a class action. On July 6, 1977, a writ of supersedeas was issued by this court, staying the injunction pending determination of the appeal. Defendants also appeal from the superior court's granting plaintiffs attorney fees.

FACTS

First, a brief summary of the EDD's procedures is necessary for an understanding of the case, based upon the lower court record, the Unemployment Insurance Code, and *California Human Resources Dept. v. Java*, 402 U.S. 121 [28 L.Ed.2d 666, 91 S.Ct. 1347]. Under the existing procedure, a person desiring to receive unemployment compensation benefits must first appear at the local office of the Employment Development Department to fill out the necessary forms. The claimant is told to return in three weeks for an eligibility benefits rights interview. During these three weeks the claimant's last employer is contacted in order to verify the reason for termination of employment and to submit any facts affecting the claimant's eligibility for benefits.

At the interview, if any inconsistent facts or questions as to eligibility arise, the claimant is given the opportunity to make explanations. The interviewer attempts to contact by telephone any interested persons, including the latest employer. They are allowed to confirm, contradict, explain or present any relevant evidence. The eligibility interviewer then makes a determination as to eligibility, unless it is necessary to obtain further information by mail. If further information is necessary, the determination may be suspended for 10 days or no later than the claimant's next report day.

In order to determine the amount of benefits for which the claimant is eligible, his earnings for the previous 19-month period are investigated. On the basis of prior earnings, the current unemployment level, and other factors, the claimant may be entitled to receive benefits up to 26 or 52 weeks. The EDD issues a written determination of eligibility, fixes the benefit amount and the number of weeks of potential eligibility, and commences payment.

After payment begins, the claimant must return to the local office every two weeks to receive his benefits.[1] Before the check is issued, however, the recipient must fill out a continued claim card, attesting to his eligibility for the last two weeks. The claimant hands the card to an interviewer at a continued claim window. The interviewer authorizes payment of the check; or, if any issue of eligibility is raised by the answers on the form, the claimant must take the form to the determinations interviewer.

The continued claim determination procedure generally involves telephoning witnesses and requesting documents in order to seek out the necessary information. The determination is normally made on the same day, thus a decision that a claimant is not entitled to benefits for a particular week severely limits his opportunity to gather and present evidence and to obtain representation. If a determination unfavorable to the claimant is made by the EDD, payment of the benefit checks is immediately suspended. Benefits may be suspended only for the weeks in question or for periods ranging up to 10 weeks, 18 weeks, or indefinitely. If the claimant appeals and wins, the amount of suspended benefits is paid in a lump sum.

The appeal is an evidentiary "fair hearing" held before a referee of the California Unemployment Insurance Appeals Board at which the claimant may be represented by counsel, present his case to an impartial official, and confront and cross-examine adverse witnesses. The percentage of cases reversed on appeal, including appeals involving the claimants' initial eligibility, is 35.1 percent (U.S. Dept. of Labor, Employment and Training Administration, Unemployment Insurance Statistics, table 18A, January-March 1977.) The average length of delay between suspension of benefits and decision of the referee is 7.5 weeks (based upon 1975 EDD figures.)

---

[1] It is only the claimant's *continuing* benefits that we are concerned with in this case.

From May 20, 1971, until May 24, 1976, the EDD followed continuing claim procedures identical to those required by the superior court's injunction, although limited to certain types of cases, pursuant to an injunction issued by the United States District Court in *Crow* v. *California Department of Human Resources,* 325 F.Supp. 1314, reversed, 490 F.2d 580, vacated 420 U.S. 917 [43 L.Ed.2d 388, 95 S.Ct. 1110].[2] This lawsuit was filed on June 4, 1976, less than two weeks after the EDD ceased complying with the vacated federal court order.

DISPOSITION

1. Social Security Act.

The main issue to be decided is whether the EDD's procedure of terminating the payment of benefits pending appeal to any claimant determined by a department clerk to be ineligible for further payments violates 42 United States Code section 503(a).[3] We are in agreement with the decision of the superior court. In rendering his opinion, the judge stated: "I cannot understand any meaningful difference between the framework of this case and the framework in *Java* [*Department of Human Resources Development* v. *Java, supra,* 402 U.S. 121]. In the *Java* case, the United States Supreme Court, as I understand it, determined that to withhold benefits because an employer takes an appeal after eligibility is determined, is violative of the federal law because the payments are then due. If eligibility is originally determined and subsequently the agency authorized to administer the unemployment insurance program determines that eligibility ought not to continue, the applicant unemployed is in the same position he was in *Java.*"[4]

[2]The case was vacated because the plaintiff's (Mrs. Crow) benefits had been reinstated. She was the only named representative of the class action suit.

[3]42 United States Code section 503(a) states: "The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—[¶](1) Such methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due;"
We do not find that a violation of 20 Code of Federal Regulations sections 650.3 and 650.4 (1978) is an issue raised by the facts in this case.

[4]In a very similar case, *Royer* v. *State Dept. of Empl. Security* (1978) 118 N.H. 673 [394 A.2d 828], the court holds that termination of unemployment insurance benefits without a prior evidentiary hearing violates the Social Security Act and the due process clause of the New Hampshire Constitution.

We recognize that, while *Java* involved the suspension of funds upon an employer's appeal on the initial determination of eligibility, the case at bar deals with the claimant's appeal upon a determination of ineligibility for a particular week or weeks. However, this factual distinction does not lead us to a contrary result. ■ The purpose of unemployment insurance is to provide the worker with security while unemployed through no fault of his own, and to enable the worker to find employment without resorting to other types of relief such as welfare. Another purpose behind the Unemployment Insurance Act was to prevent a decline in purchasing power of the unemployed. It is clear that these ends can only be accomplished through prompt payment of benefits. ■ As the court in *Java* noted on page 131 [28 L.Ed.2d at p. 674], "when due" was intended to mean "at the earliest stage of unemployment that such payments were administratively feasible after giving both the worker and the employer an opportunity to be heard." Where payment of benefits is suspended after a determination of initial eligibility, as in this case, and a department clerk then finds the claimant ineligible, the "when due" requirement of 42 United States Code section 503(a)(1) has been violated.

Defendants cite two cases in support of their position, *Torres* v. *New York State Department of Labor,* 321 F.Supp. 432, vacated 402 U.S. 968 [29 L.Ed.2d 133, 91 S.Ct. 1685], judgment reinstated 333 F.Supp. 341, affirmed per curiam 405 U.S. 949 [31 L.Ed.2d 228, 92 S.Ct. 1185], rehearing denied 410 U.S. 971 [35 L.Ed.2d 707, 93 S.Ct. 1446]; and *Graves* v. *Meystrik,* 425 F.Supp. 40, affirmed 431 U.S. 910 [53 L.Ed.2d 220, 97 S.Ct. 2164]. Both cases, however, can be distinguished on their facts. In *Torres,* the plaintiff had originally been determined to be eligible for benefits. Due to a mailing error, the local office did not receive information from plaintiff's employer disputing plaintiff's stated reason for discharge. Torres was then determined ineligible. "This decision was made after a hearing procedure identical to that initially used to determined eligibility." (*Torres, supra,* 333 F.Supp. 341, 344.) The court held that under these facts, no violation of 42 United States Code § 503(a)(1) existed. The United States Supreme Court stated in *Fusari* v. *Steinberg,* 419 U.S. 379, 388, footnote 15 [42 L.Ed.2d 521, 528, 95 S.Ct. 533]: "The District Court interpreted our summary affirmance in *Torres* to indicate that benefits are not 'due' under § 303 until administratively deemed payable. 364 F. Supp., at 930. While this is a plausible reading of the evolution and affirmance of *Torres,* it is not one that we can endorse. Such a definition of the 'when due' requirement of federal law would leave little vitality to *Java* and would nullify the congressional intention

of requiring prompt administrative provision of unemployment benefits. See 402 U.S., at 130-133. By reading our summary affirmance in *Torres* at its broadest, the District Court heightened the tension between that judgment and our more considered disposition of *Java.*"

The court in *Graves* v. *Meystrik, supra,* 425 F.Supp. 40, also found that no violation of the Social Security Act had occurred. However, it is apparent from the facts of that case that under the Missouri unemployment insurance procedures there is no initial eligibility interview (*id.,* at p. 41, finding of fact No. 3). Instead, "the initial determinations are made on a week-to-week basis." (*Id.,* at p. 50.)

We reject defendants' characterization of the California unemployment insurance system as one under which no suspension of benefits can occur because a claimant must completely reestablish his eligibility every week. Although the claimant must meet certain requirements each week to maintain his status, the court in *Java, supra,* 402 U.S. 121 declared at page 127 [28 L.Ed.2d 666 at page 671], "the interview for the determination of eligibility is the critical point in the California procedure."

2. Due Process.

Although the finding of a violation of the Social Security Act is alone sufficient to resolve this case, another ground also exists. ■ We find that the EDD's practice of affording posttermination hearings for continuing claim recipients does not meet with the requirements of due process under article I, section 7 of the California Constitution.

■ Procedural due process involves the deprivation of a "liberty" or "property" interest. Appellants argue that unemployment insurance claimants have no protectable interest in government benefits, but merely a hope or expectancy interest. *Skelly* v. *State Personnel Bd.,* 15 Cal.3d 194, 207 [124 Cal.Rptr. 14, 539 P.2d 774], held, however, that "when a person has a legally enforceable right to receive a government benefit provided certain facts exist, this right constitutes a property interest protected by due process. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 261-262 [25 L.Ed.2d 287, 295-296, 90 S.Ct. 1011].)" The court in *Goldberg,* while finding that welfare benefits "are a matter of statutory entitlement for persons qualified to receive them," also stated: "Relevant constitutional restraints apply as much to the withdrawal of public assistance benefits as to disqualification for unemployment compensation, . . ." (*Goldberg,*

*supra,* at p. 262 [25 L.Ed.2d at p. 296].) It is clear then that unemployment insurance benefits are a type of property interest protected by the due process clause.[5]

In deciding whether or not a pretermination hearing is required by due process, it is necessary to weigh the competing interests of the individual and the government in light of the particular facts of the case. (*Arnett* v. *Kennedy,* 416 U.S. 134, 168 [40 L.Ed.2d 15, 41, 94 S.Ct. 1633]; *Goldberg* v. *Kelly, supra,* 397 U.S. 254, 263-266 [25 L.Ed.2d 287, 296-298].) Some of the factors to be considered according to *Skelly, supra,* 15 Cal.3d 194, 209, are, "whether predeprivation safeguards minimize the risk of error in the initial taking decision, whether the surrounding circumstances necessitate quick action, whether the postdeprivation hearing is sufficiently prompt, whether the interim loss incurred by the person affected is substantial, and whether such person will be entitled to adequate compensation in the event the deprivation of his property interest proves to have been wrongful."

Although the department's appeals board does conduct full evidentiary hearings, the interview conducted by a department clerk concerning a claimant's continuing eligibility does not meet the requirements of due process. The claimant is given no prior notice that he may be ineligible for continuing benefits and thus has no opportunity to gather evidence, obtain witnesses, or obtain the aid of counsel. Appellants suggest that a claimant is free to bring an attorney and witnesses with him to the local unemployment office each time he reports for continuing benefits, but this suggestion is impractical and places an unfair, and possibly an expensive, burden upon a claimant every two weeks.

[5]Appellants rely heavily upon *Mathews* v. *Eldridge,* 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893], in which the Supreme Court held that due process does not require that the recipient of social security disability payments be afforded an opportunity for an evidentiary hearing prior to the termination of benefits. The critical distinction between *Mathews* and the case at bar is the differences in both the purposes and the effects of the respective programs. First, unlike disability insurance, the purpose of unemployment insurance is to provide continuing income to the worker.

Secondly, the effect of a temporary deprivation of benefits places a greater financial burden on the unemployment insurance recipient. The court in *Mathews, supra,* at p. 340 [47 L.Ed.2d at pp. 36-37], distinguished *Goldberg* v. *Kelly* [*supra*], 397 U.S. 254, stating: "Eligibility for disability benefits, in contrast, is not based upon financial need. Indeed, it is wholly unrelated to the worker's income or support from many other sources, . . ." Although unemployment insurance compensation, unlike welfare payments, is not based strictly upon need, a deprivation of benefits may have substantially the same effect. Therefore, we do not believe that the rationale behind the holding in *Mathews* should be extended to unemployment insurance compensation cases.

At the interview the claimant does not have the right to confront and cross-examine witnesses. Appellants contend that this right is not an essential element of a due process hearing as long as the decider of fact has enough information from both sides to make a fair decision. With this we cannot agree. The right of the claimant to confront witnesses against him in order to supply the interviewer with all the facts is implicit in the type of due process hearing required here.

Any increase in government costs which might result from our decision is outweighed by the claimant's need to receive prompt payment of benefits. The loss of unemployment insurance benefits may have severe effects upon the worker and his family. A lump sum payment, which claimants who successfully appeal a denial of continuing benefits receive, defeats the purpose of unemployment insurance. These benefits "provide cash to a newly unemployed worker 'at a time when otherwise he would have nothing to spend,' serving to maintain the recipient at subsistence levels." (*California Human Resources Dept.* v. *Java, supra,* 402 U.S. 121, 131-132 [28 L.Ed.2d 666, 674].)

We do not doubt, as defendants point out, that some percentage of the funds paid to claimants eventually found ineligible for continued benefits will be unrecoverable. However, the potential abuse by some of the procedures designed to protect all claimants cannot be the basis for deciding whether the procedures are required by due process. Because we find that the procedures of the California EDD violate California due process, it is not necessary to reach the question of whether the due process clause of the United States Constitution has been violated.

3. Attorney's Fees.

The final question is whether the decision by the superior court granting attorney's fees to plaintiffs is error. We find that the awarding of attorney's fees to plaintiffs was not an abuse of the trial court judge's discretion. It is clear that this action falls into the category of cases covered by Code of Civil Procedure section 1021.5. This provision sets out several requirements which a plaintiff must meet before the court may, in its discretion, award attorney's fees.[6] Under subdivision (a), a

[6]Code of Civil Procedure, section 1021.5 states: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private

significant benefit, whether pecuniary or nonpecuniary, must be conferred on the general public or a large class of persons. We find that the upholding of unemployed workers' right to prompt payments under the Social Security Act is a significant benefit to both unemployed workers and the public at large. Subdivision (b) states that the necessity and financial burden of private enforcement must be such as to make the award appropriate. Since the Attorney General represents the defendants in this case, the necessity of private enforcement of unemployed workers' rights is apparent. The financial burden involved in this litigation is probably too great for any individual claimant to carry. Defendants argue that the AFL-CIO and United Steel Workers of America are well able to meet the costs of this action. However, the code does not make financial status of the prevailing party the criteria for awarding fees. We cannot say that the trial court abused its discretion in awarding fees to the plaintiffs.

■ Defendants point out that at the time the court below rendered its judgment, Code of Civil Procedure section 1021.5 was not in effect. Therefore, defendants contend section 1021.5 cannot be applied to this action. *Kievlan* v. *Dahlberg Electronics,* 78 Cal.App.3d 951, 959 [144 Cal.Rptr. 585] (appeal to U.S. Supreme Court dism. Mar. 19, 1979, 440 U.S. 951 [59 L.Ed.2d 765, 99 S.Ct. 1487]), held that section 1021.5 is procedural and applies to all pending cases. Citing *Olson* v. *Hickman,* 25 Cal.App.3d 920, 922 [102 Cal.Rptr. 248], the court said: "A lawsuit is governed by a change in procedural rules made during its pendency, and the suit is pending until its final determination on appeal."

It is therefore not necessary to reach the question of whether plaintiffs are entitled to attorney's fees under the California private attorney general doctrine.

The judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.

A petition for a rehearing was denied February 23, 1979, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied March 29, 1979. Clark, J., Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.

---

enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."